Good morning. We will call the cases off the calendar in the exact order in which they were filed. I don't believe so because tens of thousands of these cases aren't then published. And what we're looking at is the publication of this case, the continued use of this case. We're not asking an opinion that says that the Court of Appeals should reverse itself or the Court of Appeals can't do what it did. What we're asking the court to do is simply say this opinion will no longer be published. Mr. Valentino, you make kind of a sympathetic approach and you have a lawyer and he's faced with some language and an opinion that's going to follow him the rest of his career. And it's why we're very careful of what we put in published opinions about lawyers. And you even go farther and you say, and he didn't even have a hearing before they did this to him. He asked for a hearing. He didn't get it. And so if we were to change that, it would probably be on the basis that there was a denial of due process that he should have had a hearing and an opportunity to present his side of it. But here you've got a state appellate court that considered that very issue and you can kind of see those justices saying, well, we don't really need a hearing because everything on which we have based this language was before us already. So there's no point in having a hearing or granting a rehearing. Now, assuming, and we have to kind of indulge certain assumptions to give validity to these opinions of the state court judges, you would be asking us really to second guess that determination by the state court judges. That's the real problem, as I see it. Okay. And let me, let me address that. With respect to the request for rehearing, he sought to redress their due process violation. And what they did was they simply said, okay, we can't sanction you under this rule that we already did. So we'll sanction you under a completely different rule. So what they did was they originally denied him due process, denied him a hearing, sanctioned him under rule A. He said, I want to, here are the facts that you didn't have since this was never raised before. Consider these. They said, okay, we can't do it over here. So now we're going to do it over here. He never briefed or gave them any facts or information or had an opportunity for a hearing under the second statute. Did he ask for rehearing on that second determination? I don't have an answer to that question. There's no second rehearing option available. I don't know that he sought one. I know he appealed at that point, which appeal is not taken up. But the procedural rules don't allow for a second reconsideration. Are state bar disciplinary proceedings still pending? Yes, they are. Yes, they are. At what stage are those? They are at this juncture, due to the myriad of circumstances that have gone on, including this case. Mr. Witasik has filed a petition for disability and active status. The hearing has been held on it. Excuse me, filed a petition for disability and active status? And active status, due to his psychological state. The hearing has been held on that petition and we're awaiting a decision on that. The underlying cases are before the hearing officer and a decision could be coming out on those. We've asked for a stay based on the disability and active status, which was denied. And there was an appeal of that issue, which is pending. So at this point, they're pending and that's the state that they are in. Your points are very clearly made in your briefs. Would you care to retain 50 seconds for a rebuttal? Yes. Thank you. We'll hear from the other side. May it please the court, Richard Albrecht, Assistant Attorney General, on behalf of the Court of Appeals and the individual judges that were named in the case. It's our position that this case falls squarely within the Rooker-Feldman doctrine, which would prohibit the court from reconsidering and undoing what the state Court of Appeals decision... Do I understand that the Rooker-Feldman doctrine was not relied on early in this case? That's correct. The Rooker-Feldman doctrine was raised for the first time on appeal. Why should we entertain that theory if you're raising it for the first time on appeal? It's a jurisdictional, subject matter jurisdictional issue, which can be raised at this time on appeal. Setting aside those kinds of questions, are you comfortable with the process that was meted out to Mr. Witasik in this case? I am. I think it's not correct to say that due process was not received. The issue of sanctions was argued in the briefs presented to the state Court of Appeals, and I think Mr. Witasik had an opportunity to respond to that request for sanctions that was raised in the appeals, and the Court of Appeals judges considered those issues and, based on the record before them, determined that the briefs, the appeal that had been taken was not well taken. Did they shift grounds? They did not shift grounds. The issue that they determined should be sanctioned was taking a frivolous appeal, and based on the record before them, found that the appeal was not well taken. You heard the other side say they switched gears in midstream and didn't give Mr. Witasik an appropriate opportunity to respond to the new theories. Under the new theory in the motion for rehearing, Mr. Witasik had an opportunity and did present affidavits from his client saying that they had, in fact, been behind him and supported him in the actions that he had taken, and therefore the Court of Appeals did remove that portion of the sanction in which he was going to repay his client, but they did still find that it was sanctionable conduct in taking the appeal for which he should be sanctioned, but they removed that portion in which he was to repay the attorney's fees to his client based on the affidavit that was in front of them. So is it your position that the hearing wouldn't have been any different anyway? I mean, that everything was before the Court that they needed? Correct. It was essentially a matter of law for the Court to determine at that point whether or not the appeal was frivolous in nature as it had been taken, and the Court of Appeals had that on the record. Mr. Witasik responded to the request for sanctions by the appellee in the, before the Court of Appeals. Do you have anything else? The only other item is that the appellant contends that he did not seek monetary damages from the individual judges. I think the complaint speaks for itself. It clearly did ask for that. The last amendment takes care of that, so. Okay. Or judicial immunity would take care of it, too. Thank you. Thank you. We'll hear from your co-counsel. Good morning, Your Honors. Leslie Ann Hackey for the State Bar of Arizona, and John Furlong and Shawna Miller. They were the investigators for the State Bar? As bar counsel, correct. I think we've laid out our argument pretty well in our briefs. Mr. Witasik completely, he addresses the state law immunity issue under Arizona Supreme Court Rule 54-L. However, he completely ignores the fact that the Court found that there was Eleventh Amendment immunity in its order on pages 6 through 8, and accepted the State Bar defendant's argument that while Rule 31-A-1 did have a sue-and-be-sued clause, it noted and almost tracked in direct order our argument that there were other statutes and other rules that would indicate that that immunity had not been expressly waived by the State Bar. And it specifically noted that the State Bar defendants persuasively argued that the intent behind Rule 31 is not to permit frivolous litigation surrounding disciplinary functions of the State Bar. Well, that would take care of the damage claim, I guess, under Eleventh Amendment immunity. Correct. And then the injunctive and declaratory relief requests would, you say, be improper under younger abstention? Is that your argument? Correct. As Mr. Valentino has indicated, the State Bar proceedings are ongoing and are still pending. And therefore, the younger abstention doctrine would preclude any of the claims for relief sought, including injunctive and declaratory relief. What Mr. Witasik really is expecting this Court to do is review what the State Bar as an integrated arm of the Arizona Supreme Court did in its investigative and prosecutorial and disciplinary processes. And therefore, under the younger abstention doctrine, all of the claims for relief would be precluded. He also fails to point out that as to the State Bar defendants, he is claiming a substantial monetary and punitive damage award. And all of those claims have to go by the wayside based upon the younger abstention doctrine, as well as the Eleventh Amendment immunity arguments, which were ignored in his opening brief and again ignored in his reply brief. And the District Court did indicate and did state that the State Bar defendants have presented several valid arguments. The Court said they were valid arguments. It chose only to discuss the Eleventh Amendment immunity grounds because that took care of the case as far as it was concerned. Can the State Bar in its hearing do anything to ameliorate the language in the published appellate opinion by the judges? I don't believe it has that jurisdiction. However, the Arizona Supreme Court in its review of the disciplinary process, which Mr. Witasik was more than welcome to take his case through the full disciplinary process to the Arizona Supreme Court, could do that very thing once it reached its review. Oh, yeah. Okay. So the State Bar picked up, it started its investigation after it read this opinion or became aware of it? Correct. The opinion in the ABC case was the catalyst for the investigation of the Arizona  Okay. So the State Bar, in its review of the opinion of Mr. Witasik, there had been two previous complaints concerning similar... Okay. Well, I don't want to get into that. But presumably, then, Witasik in the disciplinary proceedings could make a showing that he didn't do anything that warranted disciplinary action, that he was a choir boy throughout. He certainly had the opportunity to defend himself and present whatever position he wanted to present and have that considered by the Arizona Supreme Court in the review process of his disciplinary proceedings. He chose not to do that. During the pendency of disciplinary proceedings in your state, are writs of mandamus available through the courts if a person feels aggrieved by process going off track in the disciplinary proceeding? You know, quite frankly, I'm not sure about that. Or in Idaho. You can go to the courts if you feel that you're being denied some kind of process. I don't know whether they would be specifically called writs of mandamus. What we have is what we call special actions. The courts tried to simplify the wording a little bit, but you can get intermediary appeals and review of certain processes through what is called special action. And that has replaced the writs of mandamus types of actions. We're trying to make sure people understand what's going on? Sure. Shocking. Sure. So we would stand on our briefs, Your Honor, and unless you have any other questions, we feel that the court addressed the 11th Amendment immunity, found that it applied, also validated the Younger abstention in its notation that the State Bar had presented several valid arguments and validated those as addressed in the State Bar's motion to dismiss. And affirm. Thank you. Thank you, Counsel. Counsel, who are Grant, Noyes, and Weisberg? Pardon me? Grant, Noyes, and Weisberg? Those are the appellate judges. I was taken in your reply brief by your protestations that this case is not about money, yet I read in the complaint you're asking for $5 million from them. No. What was pled was damages in excess of $5 million, but I believe that the appeal was limited to the injunctive and non-economic relief, and that's all we've raised at this point in terms of an appeal. We also had non-state actors who acted in concert with the witnesses. Yes, there were witnesses and there were also other attorneys that were sued. There were several other non-direct state entities that were sued in the underlying case. Those were dismissed as well. An appeal from that was not taken. Our appeal is strictly limited to the non-economic issues, the injunctive relief, as to all of the remaining defendants, and I believe we tried to make that clear in the briefs that that's what we have limited the appeal to. Who drafted this complaint? I was not a party to that. I cannot answer that question. Good. And if I may take a couple of seconds with respect to the Rucker-Feldman issue, it wasn't raised. I believe it's been waived, and I don't believe it applies in any event, because we're not asking this court to revise or to reverse the state appellate court decision. We're asking that it be depublished. We're asking the court take some action to prevent the That's really a difference without much distinction, isn't it? No, it's not at all. A state depublish a case? Not at all. It doesn't affect that opinion. What it does is at least it prevents the continued damage to my client's life, his reputation, his honor, which is going to continue for as long as that case remains in publication. Depublicizing the case does not reverse anything the court did, does not eliminate the monetary sanction that he in fact was assessed and that he in fact paid. What it does do, though, is it gives him back a bit of his honor, a bit of his integrity that was wrongfully taken. And I do want to point out that if you review the appellate, that court decision, the appeal was taken by Mr. Witaska on behalf of his client. No appeal was ever made of any denial of sanctions which were denied in the trial court. But one of the decisions you make as an appellate court is whether to publish or not. And you publish things that you think for whatever reason add something to the body of law. And if it's conduct involving an attorney, that it would show to other people what they shouldn't do, that type of thing. So essentially that is part of the decision making, not only what you put in your opinion, but whether you want it published or not or whether you feel it contributes to the body of law. So essentially you are interfering with what the court thinks is a proper decision as part of the whole package. Well, I don't agree because the case will stay the same. But the harm that's being caused by the denial of due process to my client is being somewhat corrected. It's never going to be 100% corrected. But people can cite something that you publish. That's correct. And so that's because you think that it should properly be cited as standing for what the law is. Right. And you've got to balance that interest against the denial of due process and the scathing opinion that resulted from that denial to my client. I believe that on balance what you're doing is you're preventing a continuing future injury in the only manner that we can. And you're still leaving the opinion intact and you're not countermanding what they've done, even though they've clearly denied this man due process, sanctioned him improperly without notice or hearing, and then issued a published opinion to hoist him on their patard and show him as an example of what not to do. He is taking an extremely large burden for the benefit of the state in that regard. Does the published opinion quote the letters he wrote to opposing counsel in part of the saga? It quotes, I think on a footnote, one letter. And that's an interesting thing that we need not get into, but those letters were in response to equally scathing letters from the other side, which had they had the hearing, all that would have come out. And, again, also points out another example of why it's so inappropriate that this man and his reputation have to forever be besmirched by a lack of due process. Thank you, counsel. The case just argued is ordered submitted. We'll get you a decision as soon as we can. Thank you, Your Honor. Bonucci v. Barnhart.
judges: Thompson, Trott, Callahan